No. 25-50717

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

SAMANTHA LIEDTKE,

*Plaintiff - Appellant*,

v.

THE CITY OF AUSTIN,

*Defendant - Appellee.*

---

## BRIEF OF DEFENDANT – APPELLEE

---

On Appeal from the U.S. District Court for the
Western District of Texas – Austin Division
USDC No. 1:23-cv-803-RP

---

Christine E. Reinhard
Texas Bar No. 24013389
creinhard@fennemorelaw.com
Michael J. Ritter
Texas Bar No. 24074960
mritter@fennemorelaw.com
FENNEMORE CRAIG, P.C.
8000 IH 10 West, Suite 1600
San Antonio, Texas 78230
T: (210) 447-8033
F: (210) 447-8036

Sara Schaefer
Texas Bar No. 24086598
Sara.schaefer@austintexas.gov
AUSTIN CITY ATTORNEY'S OFFICE
P.O. Box 1546
Austin, Texas 78767
T: (512) 974-1536

*Counsel for Defendant-Appellee*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **Samantha Liedtke** — Plaintiff–Appellant

2. **Holt M. Lackey** — Counsel for Plaintiff–Appellant

3. **Amaris I. Diaz** — Counsel for Plaintiff–Appellant

4. **Rebecca Webber** — Counsel for Plaintiff–Appellant

5. **City of Austin, Texas** — Defendant–Appellee

6. **Sara Schaefer** — Counsel for Defendant–Appellee

7. **Christine E. Reinhard** — Counsel for Defendant–Appellee

8. **Michael J. Ritter** — Counsel for Defendant–Appellee

9. **Abigail M. Orgeron** — Counsel for Defendant–Appellee

10. **Honorable Robert Pitman** — United States District Judge, Western District of Texas

*/s/ Michael J. Ritter*
Michael J. Ritter
Counsel for Defendant-Appellee

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary. The vast majority of Appellant Samantha Liedtke's arguments concern issues she waived or that are not before this Court, including related to alleged retaliatory intent and other evidentiary frameworks. This appeal instead turns on a single, narrow legal issue that is fully presented in the briefs: whether, for purposes of her Title VII retaliation claim, Liedtke's placement on an Employee Success Plan (ESP) constitutes a materially adverse employment action under the Supreme Court's *Burlington Northern & Santa Fe Railway, Co. v. White*, 548 U.S. 53 (2006). The governing legal standards as to this legal issue are well settled in this Circuit. Because oral argument would not aid the Court's decisional process, this appeal is suitable for resolution on the briefs alone. Nevertheless, if the Court set the case oral argument, Appellee City of Austin respectfully requests the opportunity to participate.

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES.............................................................................1

INTRODUCTION..................................................................................................2

STATEMENT OF THE CASE.............................................................................4

    I.    **The Austin Police Department uses Employee Success Plans (ESPs) to correct recurring performance issues through supervision and training.** ........................................................................................................5

    II.   **During her fifteen-month probationary field training period, Liedtke was assigned a new supervisor who placed her on an ESP.**....................6

    III.  **Liedtke's ESP merely required additional supervision and, for sixteen working days, occasional training drills.** ...............................................8

    IV.  **Admitting her ESP was based largely on her own self-reported concerns, Liedtke resigned due to "mind set" feedback she received**...............................................................................................10

    V.   **The district court granted summary judgment because the ESP issued to Liedtke did not amount to an "adverse employment action."** .........11

SUMMARY OF THE ARGUMENT .................................................................13

ARGUMENT.......................................................................................................15

    I.    **Liedtke has inadequately briefed any challenge to the summary judgment granted on her sex discrimination and hostile work environment claims.** ........................................................................15

        A.   Liedtke has abandoned her hostile work environment claim..............16

        B.   Liedtke has abandoned or waived her sex discrimination claim. .......18

           1.  *Liedtke's brief fails to show that any adverse employment action can support her sex discrimination claim.* ..................................18

           2.  *Liedtke's speculation about the fate of* McDonnell Douglas *does not obviate her need to show an adverse employment action.*....20

    II.   **Summary judgment on Liedtke's retaliation claim should be affirmed**..................................................................................................25

        A.   The sole element before this Court is the "materially adverse employment action" requirement set forth in *Burlington*. ..................26

1. *Liedtke cannot rely on a showing of "intent" to supplant* Burlington*'s requirement that she also show a materially adverse "action."* ...................................................................................27

2. *The district court's failure to cite* Burlington *is not, alone, a sufficient basis for reversal.* .....................................................30

B. Liedtke has waived her challenge by not citing the record or authority and not discussing what the ESP actually entailed. ...........................32

C. Liedtke did not raise a fact issue that, under *Burlington*, her ESP would dissuade a reasonable employee from Title VII-protected activity. .........................................................................34

1. *Giving an employee a training and supervision plan is not, alone, a materially adverse employment action under* Burlington. .......35

2. *Liedtke failed to raise a fact issue that the ESP was anything more than a training and supervision plan.* ................................37

3. *By ignoring all context, Liedtke proposes an untenable rule that an ESP, regardless of context, is always materially adverse.* ......40

**CONCLUSION & PRAYER** ...........................................................................41

# TABLE OF AUTHORITIES

**CASES**                                                              **PAGE(S)**

*Abebe v. Health & Hosp. Corp. of Marion Cnty.*,
    35 F.4th 601 (7th Cir. 2022) ...............................................................41

*Ames v. Ohio Dep't of Youth Servs.*,
    605 U.S. 303 (2025) (Thomas, J., concurring) ...........................21, 22

*Aryain v. Wal-Mart Stores Tex. LP*,
    534 F.3d 473 (5th Cir. 2008) ...............................................................37

*Berry v. Crestwood Healthcare LP*,
    84 F.4th 1300 (11th Cir. 2023) ...........................................................25

*Brown v. Liberty Mut. Group, Inc.*,
    616 F. App'x 654 (5th Cir. 2015) ........................................................39

*Burlington Northern & Santa Fe Railway, Co. v. White*,
    548 U.S. 53 (2006)..................................................................*passim*

*Chacon v. York*,
    434 F. App'x 330 (5th Cir. 2011) (per curiam) ...........................17, 25

*Credeur v. La. Through Office of Att'y Gen'l*,
    860 F.3d 785 (5th Cir. 2017) ...............................................................39

*Decou-Snowton v. Jefferson Parish*,
    24-30079, 2024 WL 4879466 (5th Cir. Nov. 25, 2024)....................38

*Ervin v. Sprint Comm. Co. LP*,
    364 F. App'x 114 (5th Cir. 2010) (per curiam) ..................................15

*Evans v. McKinney Marine Inc.*,
    127 F.3d 34 (5th Cir. 1997) (per curiam) ....................................18, 25

*Fiero v. CSG Sys., Inc.*,
    759 F.3d 874 (8th Cir. 2014) ...............................................................41

*Hawthorne v. Birdville Indep. Sch. Dist.*,
    No. 4:23-cv-00301, 2024 WL 1607071 (N.D. Tex. April 12, 2024)
    (mem. op.)............................................................................................17

*Hudson v. Lincare, Inc.*,
  58 F.4th 222 (5th Cir. 2023) ..................................................26, 28

*Ismael v. Roundtree*,
  161 F.4th 752 (11th Cir. 2025) ...................................................25

*Lemonia v. Westlake Mgmt. Servs., Inc.*,
  No. 22-30630, 2023 WL 6878915
  (5th Cir. Oct. 18, 2023) (per curiam)................................... 31, 35, 36, 37, 38, 41

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973).................................................................*passim*

*Melancon v. Lafayette Gen. Med. Ctr., Inc.*,
  No. 22-30704, 2023 WL 6621679 (5th Cir. 2023)..............................39

*Miceli v. U.S. Dep't of Transp.*,
  83 F. App'x 697 (6th Cir. 2003) (per curiam)...................................41

*Muttathottil v. Gordon H. Mansfield*,
  381 F. App'x 454 (5th Cir. 2010) (per curiam)..........................27, 28

*Palova v. United Airlines, Inc.*,
  161 F.4th 350 (5th Cir. 2025) ......................................................15

*Ray v. Tandem Computs., Inc.*,
  63 F.3d 429 (5th Cir. 1995) ...................................................36, 38

*Razavi v. Franklin Apt. Mgmt., Ltd.*,
  No. SA-21-CV-01093-JKP, 2022 WL 4545755 (W.D. Tex. Sept.
  28, 2022) ...................................................................................17

*Rollins v. Home Depot USA*,
  8 F.4th 393 (5th Cir. 2021) .....................................16, 17, 21, 32, 33

*Smith v. Lockheed-Martin Corp.*,
  644 F.3d 1321 (11th Cir. 2011) ....................................................25

*Stewart v. Miss. Transp. Comm'n*,
  586 F.3d 321 (5th Cir. 2009) .......................................................37

*Thomas v. LeBlanc*,
  846 F. App'x 282 (5th Cir. 2021) (per curiam)................................15

*Tynes v. Fl. Dep't of Juvenile Justice*,
   88 F.4th 939 (11th Cir. 2023) ................................................................25

*U.S. Bank Nat'l Ass'n v. Verizon Comms., Inc.*,
   761 F.3d 409 (5th Cir. 2014) ................................................................16

*United States v. De La Garza*,
   460 F. App'x 406 (5th Cir. 2012) (per curiam) ....................................32

*Vela v. City of Houston*,
   276 F.3d 659 (5th Cir. 2001) ................................................................16

*Vine St. LLC v. Borg Warner Corp.*,
   776 F.3d 312 (5th Cir. 2015) ................................................................31

*Wantou v. Wal-Mart Stores Tex., LLC*,
   23 F.4th 422 (5th Cir. 2022) ..........................................................12, 28

*Welsh v. Fort Bend Indep. Sch. Dist.*,
   941 F.3d 818 (5th Cir. 2019) ............................. 35, 36, 37, 38, 39, 41

### STATUTES

42 U.S.C. § 2000e-2(a)(1) ...........................................................22, 23, 24

42 U.S.C. § 2000e-3(a) .............................................................................26

42 U.S.C.§ 2000e-5 ..................................................................................23

### RULES

FED. R. APP. P. 28(a)(8)(A) ............................................................15, 32, 33

FED. R. CIV. P. 56(a) ................................................................................15

## STATEMENT OF THE ISSUES

1.      Despite arguing that the district court applied "a bright-line rule that an Employee Success Plan (ESP) can never constitute an 'adverse employment action,'" is Liedtke arguing for the converse—a bright-line rule that an ESP—without any context or details—always is a materially adverse employment action?

2.      Because the district court relied on cases that cited the proper *Burlington* standard for Title VII retaliation claims, and Liedtke admits this Court can disregard any erroneous analysis in its de novo review, has Liedtke failed to show the district court "conflated" the discrimination and retaliation standards or that any such error would require reversal?

3.      Does Liedtke's third issue show she is trying to compensate for having no evidence of the only Title VII retaliation element at issue in this appeal by relying on alleged "unusually strong" evidence pertaining to an entirely different element?

4.      Does this Court need to address evidence of retaliatory intent when Liedtke admits the district court granted summary judgment only on the "materially adverse employment action" element and not the retaliatory intent element of her Title VII retaliation claim?

5.      Does this Court need to address the viability of the *McDonnell Douglas* burden-shifting framework when Liedtke failed to raise this issue below and when this issue pertains to retaliatory intent, an element not at issue on appeal?

## **INTRODUCTION**

Samantha Liedtke, a former probationary police officer of the City of Austin, has, in various ways, waived or abandoned many of the issues she attempts to raise in this employment-related appeal. In fact, the only issue Liedtke has arguably preserved is whether, for purposes of her Title VII retaliation claim, she suffered a "materially adverse employment action" when she was placed on an Employee Success Plan (ESP) in late January 2021. Under the U.S. Supreme Court's decision in *Burlington Northern & Santa Fe Railway, Co. v. White*, 548 U.S. 53 (2006), a materially adverse employment action is one that would dissuade a reasonable employee from opposing Title VII-prohibited discrimination. Beyond asserting—without supporting record cites—that her ESP was "disciplinary" in nature, Liedtke's brief fails to explain to this Court what an ESP is, what its intended purpose was when issued to her, or what her ESP actually required her to do. Most likely, she took such an approach because the underlying record evidence indisputably demonstrates that her ESP was nothing more than a preconceived training tool employed during her probationary period to help her succeed and become a full-fledged police officer for the City of Austin.

Lacking evidence to show her ESP constituted a materially adverse employment action, Liedtke focuses her brief almost exclusively on immaterial facts and legal arguments that pertain to an entirely different element of her Title VII

retaliation claim: causation as demonstrated by evidence of retaliatory intent. To this end, Liedtke highlights inflammatory facts that even she must admit are not relevant to the element at issue. Rather, these facts are relevant only to the retaliatory intent element of her Title VII claim or to her hostile work environment claim that she has abandoned now on appeal. Liedtke also attempts to shoehorn her retaliatory-intent arguments made to the district court into her "adverse employment action" arguments on appeal, even copying and pasting them from her cross-motion for summary judgment below (the denial of which motion she does not appeal) to the sections titled "adverse employment action" in her brief. For the first time on appeal, Liedtke additionally tries to challenge the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting framework that currently applies to Title VII retaliation claims. But, even setting aside her failure to raise that challenge to the district court, she again misses the mark, as that framework governs how circumstantial evidence can prove retaliatory intent, not whether any requisite harm has occurred, which is the crux of the materially adverse employment action inquiry.

On this specific issue, Liedtke cites virtually nothing in the record and absolutely no authority to show why her ESP satisfies the *Burlington* standard. And, despite accusing the district court of creating a brightline rule that an ESP is **never** a materially adverse employment action, Liedtke effectively posits the exact opposite: that any ESP—regardless of context or content—will **always** be materially adverse.

Because the undisputed contextual facts in the record below establish that Liedtke's ESP was non-disciplinary and only mandated additional training during her probationary period, Liedtke's challenges to the summary judgment awarded to the City of Austin (assuming they are even preserved) must be rejected. This Court therefore should affirm the district court's judgment in all respects.

## STATEMENT OF THE CASE

From the opening sentence of her Statement of the Case, Liedtke shifts focus away from the only challenged element of her retaliation claim—whether a January 25, 2021 ESP constituted a materially adverse employment action—and instead focuses her efforts on a separate and distinct element, retaliatory intent. *See* Appellant's Br. at 14 ("There is little doubt that the [ESP]…was motivated by retaliation"). She concedes this tactic later in her Statement of the Case when she acknowledges that the district court did not address retaliatory intent and instead held her ESP "did not rise to the level of an 'adverse employment action.'" *Id.* at 15. Instead of appropriately shifting her focus back to the ESP itself, Liedtke largely omits any explanation of what her ESP entailed, choosing to emphasize alleged evidence of "harassment and hostility from her all-male shiftmates" that is pertinent only to her now-abandoned hostile work environment claim. *Id.* at 16-20 (capitalization omitted). Resolving this summary judgment appeal requires a much clearer focus on the ***material*** undisputed facts as described below – specifically

4

addressing what an ESP is, what the ESP required her to do, and what impact the ESP had or would have had on her terms and conditions of employment.

## I.    The Austin Police Department uses Employee Success Plans (ESPs) to correct recurring performance issues through supervision and training.

The City of Austin employs sworn police officers through its police department, referred to in short form as APD. ROA.3429. APD is governed by comprehensive General Orders that regulate officer conduct, training, supervision, and performance. ROA.3429-3512. The General Orders, which apply to all sworn officers, are designed to ensure consistent professional standards across APD. ROA.3429-35.

Newly hired officers, however, are first subject to a fifteen-month probationary Field Training Program, which is educational and evaluative in nature. ROA.3877. The Field Training Program provides progressive training, feedback, and supervision, beginning with closely supervised field training and culminating in solo patrol status. ROA.3895-96. Throughout this probationary period, APD supervisors are required to monitor officer performance and intervene when patterns of unsafe or deficient conduct emerge. ROA.3878-79, 3898-99.

One of the tools APD supervisors use to address recurring performance concerns during the probationary period is an Employee Success Plan (ESP). ROA. 3898-99. Although APD's General Orders contain more formal disciplinary measures, the Field Training Program applicable to probationary police officers—

including as it relates to ESPs—is expressly for training only. ROA.3465-74. As the Field Training Unit Standard Operating Procedures expressly state, in that context, an ESP is "a written document designed to identify and correct the trainee's deficiencies within a reasonable time period." ROA.3898. An ESP may temporarily remove a probationary officer from solo status and place the officer back into a more supervised training phase; typically lasts between four to sixteen training days; and does not affect pay, rank, benefits, or future employment eligibility. ROA. 3898-99. If the initial four to sixteen-day ESP is not successful, the supervising officer may extend the ESP for an additional sixteen days. ROA.3898. If the trainee is then still unsuccessful, the only consequence under the Field Training Program is "a new ESP." *Id.*

## II. During her fifteen-month probationary field training period, Liedtke was assigned a new supervisor who placed her on an ESP.

Samantha Liedtke joined APD as a probationary police officer in February 2020 after graduating from the police academy. ROA.13. Following graduation, she entered the Field Training Program and completed the initial phases of training, eventually advancing to solo patrol status on APD's Edwards 400 shift[1] in May 2020. ROA.3635. As a probationary officer scheduled through May 2021, Liedtke

---

[1] APD organizes its police officers by assigning each patrol unit to a specific sector of the city and time of day, and the Edwards 400s shift was one of several other shifts that covered a certain area of the city called Edwards and specifically from the late afternoon to midnight or early morning hours. ROA.2768.

remained subject to the Field Training Program's heightened supervision and evaluation requirements, with her performance documented through daily reports and monthly evaluations. ROA.3877-89, 96-99.

Liedtke's supervisor from May 2020 through December 2020 was Sergeant (Sgt.) Jesse Sanchez. ROA.3075, 3078. While under his supervision, Liedtke was involved in multiple incidents presenting serious officer-safety risks, including the following:

- On May 20, 2020, Liedtke placed multiple juveniles into her patrol vehicle without first frisking or securing them, failed to recognize flight and furtive movements despite emerging indicators of criminal activity (including being in possession of a stolen car), and later a loaded firearm was recovered from one subject.

- On October 4, 2020, Liedtke entered a volatile disturbance involving multiple individuals and an allegation of sexual assault, engaged occupants before backup arrived, and failed to control the scene until another officer discovered a large knife within immediate reach.

- On November 6, 2020, Liedtke responded to a shoot/stab hotshot and, before coordinating with other officers, made a single-officer entry, handled a discharged firearm, and exited without clearing the apartment or securing the suspect.

- On November 28, 2020, Liedtke left an injured domestic-violence victim unattended to pursue an unconfirmed lead, resulting in the suspect returning and forcing his way into the victim's vehicle.

ROA.3067-68. As the record reflects, Sgt. Sanchez coached Liedtke about the first and fourth incidents, but only after Liedtke approached him about it. ROA.3075. He

7

did not provide Liedtke any coaching or feedback after the second incident; it only appeared later on her ESP. *Id.* As for the third incident, Sgt. Sanchez coached Liedtke after it occurred and took no other action. *Id.*

In January 2021, Liedtke was assigned a new supervisor, Sgt. Pamela McBee. ROA.3079. After reviewing Liedtke's prior training records, evaluations, and documented incidents, Sgt. McBee took a more proactive approach to Liedtke's training compared to Sgt. Sanchez. ROA.3079, 3300, 3763. In addition to the four incidents listed above, Sgt. McBee identified a "mind set" deficiency in Liedtke's performance, such as mistreating "Shots Fired" calls as "Active Shooter" calls, and not seeking to corroborate call information before taking action. ROA.3871-73. Recognizing a pattern of continuing performance issues that could be life-threatening to Liedtke or others, Sgt. McBee—together with Lieutenant (Lt.) Courtney Daniel—decided to place Liedtke on an ESP for further training. ROA.3300-01.

## III. Liedtke's ESP merely required additional supervision and, for sixteen working days, occasional training drills.

Liedtke's ESP was dated January 25, 2021 with an anticipated completion date of February 15, 2021. ROA.3870, 3873. The ESP identified two areas of deficiencies: "officer safety issues" and "mind set." ROA.3870-73. The officer safety issues were based on the four incidents listed above and the mind set issues were based on the two additional Sgt. McBee identified. *Id.*

8

In the end, the ESP had only four training and supervision requirements. ROA.3873. First, Liedtke was directed to work with her Field Training Officers "on the above identified deficiencies." *Id*. Second, the ESP required Liedtke to "concentrate on Hot Shot and Priority 1 calls in order to obtain the call dynamics necessary to address the listed deficiencies." *Id*. Third, Liedtke's Field Training Officers were asked to "conduct Table Top Exercises with [Liedtke] during down time between calls." *Id*. And fourth, Liedtke was to "participate in practical drills established by the APD Academy Learned Skills Unit that directly relate to the listed deficiencies." *Id*.

Under APD policies, Liedtke's ESP also was not considered formal discipline but instead more of an additional training guide because it was within the fifteen-month probationary period. ROA.2817-18. Consistent with that purpose, the ESP serves as a working training document and is not retained in any permanent file once complete. ROA.2818. Being placed on an ESP also imposes no change in a probationary officer's job title, pay, hours, or even status. ROA.2794-95, 3003-06. ESPs in this regard are not uncommon and do not derail careers; in fact, Liedtke and other witnesses testified that they knew of multiple employees who were placed on ESPs at some point and went on to have successful APD careers. ROA.2876, 2995-98, 3001, 4328-29.

9

**IV.   Admitting her ESP was based largely on her own self-reported concerns, Liedtke resigned due to "mind set" feedback she received.**

On February 2, 2021, Liedtke sent a notice of resignation via email to Lt. Daniel. ROA.3332. In her resignation email, Liedtke admitted that several calls did, in fact, "substantiate [her] digression to an ESP." *Id*. She also "agreed that these…calls and others that [she] self-reported while discussing this issue candidly with supervisors entail errors with the potential to impact officer safety." *Id*. She then lamented the lack of support and training from her prior supervisors. *Id*. Nevertheless, she "took the feedback in stride" and "agreed to evidence suggesting additional training for officer safety." *Id*. Simply put, Liedtke did not dispute that the officer-safety incidents cited justified her ESP. *Id*.

Liedtke's decision to resign as stated in the letter attached to her email was, instead, based on the noted "mind set" deficiency and "mentality" feedback she had received during her first week on the ESP. ROA.3332-37. Although Liedtke believed she had made progress given the prior officer safety incidents, Liedtke was struggling with the "mind set" criticism. *Id*. In her resignation letter, Liedtke noted that she spent "significant amount of time questioning whether I am capable of changing my mentality." ROA.3332. More specifically, Liedtke explained that she joined the police force because of her interest in helping those experiencing mental health crises and those who may have been victims of sexual assault. *Id*. Receiving feedback that she was taking too long on calls concerning these issues made her

10

"incredibly uncomfortable as many of these examples represent the reasons that [she] became a police officer in the first place." ROA.3334. Continuing "to struggle with the feedback [she] received regarding [her] 'mentality,'" and how other officers handled these calls, Liedtke stated she did "not believe that maintaining [her] employment with APD is in [her] best interest or consistent with [her] goals." ROA.3335.

## V.    The district court granted summary judgment because the ESP issued to Liedtke did not amount to an "adverse employment action."

Over two years later, on July 16, 2023, Liedtke sued the City of Austin under Title VII. In a single count, Liedtke multifariously alleged three distinct claims: "Discrimination, Hostile Work Environment, and Retaliation." ROA.20. Out of thirty-nine paragraphs of factual allegations (¶¶ 6-44), only one paragraph discussed the ESP:

> On January 18, 2021, Samm was put on an Employee Success Plan in retaliation for making her colleagues look bad by doing her job. The incidents used to justify her Plan were ones that she had already voluntarily brought to her supervisors for advice and counseling or ones that had never before been brought to her attention. In other words, the Employee Success Plan was unnecessary and retaliatory.

ROA.19-20 (¶ 43). Liedtke did not allege in her complaint that the ESP was issued because of her sex or as harassment based on her sex. ROA.19-20. Liedtke also did not expressly identify any particular incident to support her discrimination claim,

11

but in support of her hostile work environment claim, she alleged she was subjected to harassment, hostility, bullying, and ostracization. ROA.16, 20.

After completing discovery, Liedtke and the City of Austin filed cross-motions for summary judgment. ROA.2512, 2783. For her part, Liedtke sought to establish the City of Austin's liability for Title VII retaliation as a matter of law. ROA.2534. She asserted, in particular, that she met with Sgt. McBee after Sgt. McBee first started as her supervisor in January 2021 and complained about prior issues with other officers on her shift. ROA.2522. Liedtke's motion for summary judgment was silent as to whether she mentioned sex discrimination in this meeting with Sgt. McBee. *Id.* Instead, Liedtke asserted that one of the male officers on her shift, Officer Colaianni, approached Sgt. McBee, telling her that he and others on the shift "were concerned that Officer Liedtke would file an EEOC complaint." ROA.2515. Liedtke argued to the district court that this evidenced retaliatory intent so strong that, in combination with the cat's paw theory,[2] she established her Title VII retaliation claim as a matter of law. ROA.2531-32.

The City of Austin cross-moved for summary judgment on all claims because, among other grounds, Liedtke did not suffer sufficient harm to satisfy the "adverse

---

[2] "Plaintiffs use a cat's paw theory of liability when they cannot show that the decisionmaker—the person who took the adverse employment action—harbored any retaliatory animus. Thus, under the Cat's Paw theory, a plaintiff must establish that the person with a retaliatory motive caused the decisionmaker to take the retaliatory action." *Wantou v. Wal-Mart Stores Tex., LLC*, 23 F.4th 422, 436 (5th Cir. 2022) (internal citation omitted), *cert. denied*, 143 S. Ct. 745 (2023), *reh'g denied*, *Wantou v. Wal-Mart Stores Tex., LLC*, 143 S. Ct. 1049 (2023).

employment action" elements of her sex discrimination and retaliation claims, respectively, or sex-based hostility that rose to the level of creating an actionable hostile work environment. ROA.2792-95, 2800. The district court granted the City of Austin's motion exclusively on the "adverse employment action" element and did not reach the other elements challenged by the City of Austin's motion. ROA.8717-20. Liedtke now appeals the district court's summary judgment ruling. ROA.8757.

## SUMMARY OF THE ARGUMENT

This appeal fails because Liedtke has not preserved—much less supported—the only issue properly before this Court: whether her placement on an ESP constituted a materially adverse employment action under Title VII's retaliation standard. The district court granted summary judgment solely on that element, and Liedtke concedes the district court did not reach the element of causation and retaliatory intent. Yet rather than focus on the ESP's substance and explain how it would dissuade a reasonable employee from future protected activity, Liedtke devotes her briefing primarily to the retaliatory intent element and evidentiary frameworks that are not before this Court.

Liedtke first mischaracterizes the district court's ruling by asserting that it adopted a "bright-line rule" that an ESP can never be materially adverse. The record plainly shows otherwise. The district court relied on cases applying the *Burlington* standard and concluded—based on undisputed contextual record evidence—that the

13

ESP Liedtke received in January2021 did not rise to the level of material adversity. Liedtke's disagreement with that conclusion does not establish legal error, particularly considering that this Court's review is de novo and any alleged analytical missteps by the district court are immaterial.

More fundamentally, Liedtke cites no evidence to support that her ESP imposed any meaningful harm. She in fact does not even explain to this Court what the ESP required; how it affected her pay, rank, benefits, duties, or prospects; or how it altered her standing in the workplace. Thus, when examining the record, the undisputed evidence shows the opposite of what Liedtke baldly claims: the ESP was non-disciplinary, temporary, and designed solely to provide additional supervision and training during a probationary period without any impact on compensation or employment status.

Unable to satisfy *Burlington*'s material-adversity requirement, Liedtke attempts to substitute what she calls "unusually strong" evidence of retaliatory intent. But intent cannot replace action. Title VII's retaliation provision requires both a retaliatory motive and a materially adverse act. Arguments about cat's-paw liability, temporal proximity, pretext, or the continued viability of the *McDonnell Douglas* burden-shifting framework address only intent, not whether an ESP itself constitutes actionable harm. Thus, because Liedtke has waived or abandoned her other Title VII claims of sex discrimination and hostile work environment, and

14

because she has failed to raise a genuine dispute on the sole element at issue on appeal, the district court's judgment below should be affirmed in all respects.

## **ARGUMENT**

Although Liedtke's notice of appeal preserved her right to challenge the final judgment and all related orders, she declined to appeal the denial of her cross-motion for summary judgment. ROA.8757.[3] Consequently, only the grant of the City of Austin's summary judgment motion is before the Court. *See Ervin v. Sprint Comm. Co. LP*, 364 F. App'x 114, 117 (5th Cir. 2010) (per curiam) (scope of appellate review on summary judgment order limited to matters presented to district court). This Court reviews summary judgments de novo under the well-settled standards of Federal Rule of Civil Procedure 56. *See* FED. R. CIV. P. 56(a); *accord Palova v. United Airlines, Inc.*, 161 F.4th 350, 353 (5th Cir. 2025).

## I.    Liedtke has inadequately briefed any challenge to the summary judgment granted on her sex discrimination and hostile work environment claims.

In appellate briefing, the "Argument" section must contain the appellant's "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." FED. R. APP. P. 28(a)(8)(A). Generally, "issues not adequately briefed [are] abandoned." *Thomas v. LeBlanc*, 846 F. App'x

---

[3] Liedtke's brief makes no reference to her cross-motion or the order denying her cross-motion in the Argument section. *See generally* Appellant's Br. at 37-67. Moreover, in the section of her appellate brief entitled Conclusion, Liedtke only requests a remand for further proceedings, not a rendition of summary judgment in her favor. *See id.* at 74. Otherwise, the only reference to her cross-motion is in her short recitation of the procedural history of this case. *See id.* at 30-31.

282, 283 (5th Cir. 2021) (per curiam) (citations omitted). "There are numerous ways that a party can fail to adequately brief an argument." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 n.1 (5th Cir. 2021). These include not identifying legal standards and cites to authority; not offering record citations; presenting a conclusory argument in a perfunctory way; not offering supporting arguments in the body of a brief; or not addressing the district court's analysis and explaining how the district court erred. *See id.* (citing authorities).

Furthermore, if "an appellant challenges only one of the district court's alternative holdings, any argument that the alternative holding was in error is waived," and the appeal of the judgment "necessarily fails." *U.S. Bank Nat'l Ass'n v. Verizon Comms., Inc.*, 761 F.3d 409, 439 n.24 (5th Cir. 2014). This same principle applies at the claim level: not challenging dismissal or summary judgment as to a particular claim abandons that claim. *See Vela v. City of Houston*, 276 F.3d 659, 678 (5th Cir. 2001). Moreover, absent narrow exceptions not applicable here, a party's failure to present an issue to the district court below waives or forfeits that issue for appellate review. *See Rollins*, 8 F.4th at 397.

A.    Liedtke has abandoned her hostile work environment claim.

In her appellate brief, Liedtke never squarely challenges the dismissal of her hostile work environment claim. Part I of the Argument Section is devoted to whether her ESP qualified as a retaliatory adverse action. *See* Appellant's Br. at 37-

60. Although Part II attacks the district court's use of the *McDonnell Douglas* burden-shifting framework as to her retaliation and "discrimination" claims, Liedtke: (1) cites no part of the record indicating that the district court applied *McDonnell Douglas* to her hostile work environment claim;[4] (2) only refers to her discrimination claim on appeal (ROA.20); and (3) fails to dispute, address, or cite authorities that contest her ESP not constituting "harassment [that] affected a term, condition, or privilege of employment." ROA.8716.

In sum, Liedtke has failed to present any arguments, authorities, or record cites to challenge the summary judgment awarded to the City of Austin as to her hostile work environment claim. *See generally* Appellant's Br. at 37-60. Liedtke has therefore abandoned this claim on appeal. *See Rollins*, 8 F.4th at 397 n.1 (each independent failure of inadequate briefing waives or abandons issue). As a result, this Court should summarily affirm the district court's order granting summary judgment as to Liedtke's Title VII hostile work environment claim. *See, e.g.*, *Chacon v. York*, 434 F. App'x 330, 333 (5th Cir. 2011) (per curiam) (affirming summary

---

[4] District courts in the Fifth Circuit have uniformly held, consistent with other circuits, that the *McDonnell Douglas* burden-shifting framework does not apply to hostile work environment claims. *See Razavi v. Franklin Apt. Mgmt., Ltd.*, No. SA-21-CV-01093-JKP, 2022 WL 4545755, at *9 (W.D. Tex. Sept. 28, 2022) (citing other district court authorities and reasoning that this is "because the employer may not offer a legitimate reason for creating such an environment"); *Hawthorne v. Birdville Indep. Sch. Dist.*, No. 4:23-cv-00301, 2024 WL 1607071, at *4 (N.D. Tex. April 12, 2024) (mem. op.) (same). Liedtke cites no authority holding to the contrary, and thus, even the portion of her brief contesting the continuing viability of *McDonnell Douglas*, *see* Appellant's Br. at 60-67, cannot be read as appealing the district court's ruling as to her hostile work environment claim.

judgment on inadequately briefed claims on appeal); *Evans v. McKinney Marine Inc.*, 127 F.3d 34 (5th Cir. 1997) (per curiam) (affirming summary judgment on claim appellant abandoned on appeal).

B.    <u>Liedtke has abandoned or waived her sex discrimination claim.</u>

As with her hostile work environment claim, Liedtke's brief makes only rare references to her sex discrimination claim. For the reasons explained below, those rare references are simply not enough to preserve her appeal and invoke this Court's review. Indeed, because Liedtke has failed to present any proper challenge to the district court's ruling on this claim in her brief, this Court should conclude that she has effectively waived or abandoned her sex discrimination claim, too.

1.    *Liedtke's brief fails to show that any adverse employment action can support her sex discrimination claim.*

In her complaint filed below, Liedtke did not identify any specific adverse employment action in support of her discrete sex discrimination claim. ROA.20. In her summary judgment response, however, Liedtke arguably raised three separate adverse employment actions: (1) failure to transfer; (2) the ESP; and (3) constructive discharge. ROA.6160-67. Liedtke has abandoned her failure-to-transfer theory by not raising this theory at all to this Court in her brief. Although Liedtke does mention constructive discharge in her brief toward the very end, she has waived this purported adverse employment action by not challenging in any detailed manner the

18

district court's rationale for rejecting her constructive discharge allegation.[5] *Compare* ROA.8719, *with* Appellant's Br. at 66-67 (raising constructive discharge for first time as to retaliation but not challenging any specific reasoning of district court's order). And this is all without recognizing that, in her live pleading, Liedtke expressly confined her ESP allegations to her retaliation claim. ROA.19-20. In other words, Liedtke never alleged that—independent of the alleged retaliation—she was disparately treated from any similarly situated male employees in being placed on an ESP. ROA.13-20.

Additionally, as to the ESP itself, Liedtke fails to dispute on appeal the portion of the district court's ruling—as to her sex discrimination claim—finding her ESP was not an adverse employment action affecting the "terms, conditions, or privileges" of her employment. ROA.8718-20. As evident, the district court ruled, under this Court's decision in *Hamilton v. Dallas County*, a sex discrimination case, that the ESP did not constitute a material adverse employment action. ROA.8718 (citing 79 F.4th 494, 502 (5th Cir. 2023) (en banc)). Liedtke, however, dedicates Part I of the Argument section of her brief to arguing, solely for purposes of her

---

[5] The district court properly granted summary judgment on Liedtke's constructive discharge claim because she failed to plead it, failed to brief it in her motion for summary judgment, and failed to proffer any evidence to support the elements of a constructive discharge. ROA.8720. Liedtke does much the same in her brief, spending only two paragraphs explaining only in broad general terms why Liedtke personally felt she needed to resign but not addressing any of the constructive discharge factors or analyzing any of the ample Fifth Circuit case law to explain how the district court erred in its ruling.

retaliation claim, how the *Burlington* standard supposedly differs from the *Hamilton* standard. *See* Appellant's Br. at 43-66. But in Part II, Liedtke only argues that *McDonnell Douglas* has been called into question. *See id.* at 66-73. She does not dispute that the district court properly concluded that, under *Hamilton*, her ESP is not an adverse employment action that can support a sex discrimination claim.[6] Also, she cites no authorities that, under the anti-discrimination provision of Title VII, her ESP rose to the level of an adverse employment action. *See id.* at 43-66. Accordingly, because Liedtke has abandoned or waived every other purported adverse employment action besides related to her ESP, and because she fails to challenge the district court's *Hamilton*-based ruling, she cannot prevail on appeal and overturn the district court's grant of summary judgment to the City of Austin on her sex discrimination claim.

    2.    *Liedtke's speculation about the fate of* McDonnell Douglas *does not obviate her need to show an adverse employment action.*

To the extent Liedtke's brief can be read as challenging summary judgment on her discrimination claim, it was merely to raise the prospect that the Supreme Court might, one day, revisit *McDonnell Douglas*'s applicability at the summary judgment stage. *Id.* at 66-73. However, Liedtke does not dispute that, in this circuit,

---

[6] Liedtke cites *Hamilton* only twice in her brief (and a page off from the page listed in her Table of Authorities). *See* Appellant's Br. at 1. The first time she cites *Hamilton* is on page 44 when describing the district court's ruling. *See id.* at 44. The second time she cites *Hamilton* is on page 60 and for a particular line quote, not to engage in any deep analysis of *Hamilton*'s holding and how it affected the outcome on summary judgment in her particular case. *See id.* at 60.

*McDonnell Douglas* is—at least for now—still long-standing good law. To the extent the Court is interested in revisiting the *McDonnell Douglas* burden-shifting framework, this is not "an appropriate case" to do so. *See Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 319 (2025) (Thomas, J., concurring). Considering the specific record and briefing before this Court, three matters moot Liedtke's discussion of *McDonnell Douglas*.

First, Liedtke's putative challenge has not been preserved for appeal. *See Rollins*, 8 F.4th at 397 (issues forfeited if not raised in district court). When the City of Austin moved for summary judgment under *McDonnell Douglas*, Liedtke did not challenge its application or existence. ROA.6154-72. Liedtke therefore deprived both the City of Austin of any opportunity to develop the record or to address the continuing viability of the *McDonnell Douglas* burden-shifting framework below and the district court of any ability to flesh out an alternative holding and related jurisprudence,[7] if it found *McDonnell Douglas* did not apply. Consequently, Liedtke has forfeited any challenge to the *McDonnell Douglas* burden-shifting framework by not presenting it in her summary judgment response or any other timely district court filing. *See Rollins*, 8 F.4th at 397.

---

[7] To illustrate, Liedtke cites Eleventh Circuit cases to argue on appeal that the "convincing mosaic" standard could apply. *See* Appellant's Br. at 67-68. However, Liedtke did not cite any of these cases or present this alternative standard to the district court below for it to consider during its summary judgment review, whether in context of this Court's prior decisions or in light of the facts of this particular case. ROA.6154-72.

Second, Liedtke does not flesh out the authorities criticizing *McDonnell Douglas* and articulate what should replace *McDonnell Douglas*. Liedtke simply assumes that, if the U.S. Supreme Court eliminated *McDonnell Douglas* and required a prima facie case based more on the text of Section 2000e-2(a)(1) of Title VII, then plaintiff-employees like her would have to prove fewer elements than they currently do. *See* Appellant's Br. at 66-73. This assumption is quite questionable though, as proposed textualist interpretations of Title VII could arguably impose even higher prima facie standards for plaintiff-employees. *Cf. Burlington*, 548 U.S. at 75 (Alito, J., concurring) (arguing textualist interpretation of anti-retaliation provision requires higher standard for employee's prima facie case). It is also possible that, even if the Supreme Court clarified that *McDonnell Douglas* is not an exclusive standard on summary judgment, it could still require an employee to address the second and third steps of *McDonnell Douglas* (i.e., that the employer had a reason for the adverse action or that any proffered reason was pretextual) as part of the prima facie case. If so, the outcome of this case would be no different, making this case not "an appropriate case" to resolve this issue. *Ames*, 605 U.S. at 319 (Thomas, J., concurring).

Third, and perhaps most compelling, Liedtke's discussion of *McDonnell Douglas* does not actually challenge the district court's "adverse employment action" reasoning. This is because *McDonnell Douglas* interprets a different textual

22

requirement of Title VII's anti-discrimination provision (42 U.S.C. § 2000e-2(a)(1))

than the textual requirement at issue in "adverse employment action" jurisprudence.

*See McDonnell Douglas*, 411 U.S. at 796 & n.4 (quoting Title VII and interpreting

"because of" provision). For sex discrimination claims, Section 2000e-2(a)(1), Title

VII's anti-discrimination provision states as follows:

> It shall be an unlawful employment practice for [1] an employer [2] to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, [3] because of such individual's…sex.

42 U.S.C. § 2000e-2(a)(1) (numbering added). Thus, textually, Section 2000e-

2(a)(1) contains at least three distinct phrases that impose separate requirements to

establish the "unlawful employment practice"[8] of sex discrimination.

The first requirement is the defendant's status "an employer," as defined by

Section 2000e(b). *Id.* § 2000e(b). The second textual requirement is that the

employer must: "fail or refuse to hire or to discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment." *Id.* § 2000e-2(a)(1). Caselaw refers to this

second phrase as the "adverse employment action" requirement. *See Hamilton*, 79

---

[8] According to its statutory text, Title VII provides remedies for "unlawful employment practices." *See generally* 42 U.S.C.§ 2000e-5. Title VII also specifically delineates those "unlawful employment practices." *Id.* §§ 2000e-2 & 2000e-3. Section 2000e-2(a), for instance, provides that certain discrimination, such as sex discrimination, is an unlawful employment practice for which Section 2000e-5 remedies are available. *Id.* § 2000e-2(a)(1).

F.4th at 502 (stating that the phrase "'adverse employment action' is a judicially-coined term utilized as shorthand for the statutory phrase 'compensation, terms, conditions, or privileges of employment'"). Although *McDonnell Douglas* incorporates this second textual requirement as part of the prima facie case, its burden-shifting framework is directed more to the third requirement when there is no direct evidence an employer discriminated against an employee "because of such individual's…sex." 42 U.S.C. § 2000e-2(a)(1); *accord McDonnell Douglas*, 411 U.S. at 796 & n.4.

Simply put, even if the Supreme Court completely eradicated *McDonnell Douglas*'s burden-shifting framework, Liedtke would still be required to show an adverse employment action. *See Hamilton*, 79 F.4th at 502. In other words, even if courts were to determine that the employer discriminated against an employee "because of such individual's …sex" under Justice Thomas's proposed textualist approach, instead of *McDonnell Douglas*, the text of Section 2000e-2(a)(1) would nevertheless still require Liedtke to establish the second text-based requirement: that she was not hired, discharged, or otherwise discriminated against with respect to the "compensation, terms, conditions, or privileges of employment." § 2000e-2(a)(1). Consequently, Liedtke's complaints about *McDonnell Douglas*'s continued viability for the third textual requirement of discriminatory intent do not actually challenge the district court's decision to grant summary judgment on her sex discrimination

24

claim. Liedtke has therefore in effect abandoned this claim, requiring the district court's summary judgment ruling as to this claim to be affirmed. *See Chacon*, 434 F. App'x at 333 (affirming summary judgment where appellant failed to adequately brief and support claims on appeal); *Evans*, 127 F.3d at 34 (same).

## II.    Summary judgment on Liedtke's retaliation claim should be affirmed.

Just as her arguments about *McDonnell Douglas* improperly conflate the "adverse employment action" requirement with the "discriminatory intent" requirement, most of Liedtke's arguments about her retaliation claim similarly conflate the "adverse employment action" requirement with the "retaliatory intent" requirement.[9] Title VII's anti-retaliation provision is codified at Section 2000e-2 and reads as follows:

> It shall be an unlawful employment practice for [1] an employer [2] to discriminate against any of his employees…[3] because [4] he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

---

[9] Liedtke's reliance on Eleventh Circuit cases criticizing or bypassing *McDonnell Douglas* is misplaced. *See* Appellant's Br. 61-63. Those decisions concern how plaintiffs may prove intent or causation at summary judgment—not whether a materially adverse employment action occurred in the first place. *See generally Ismael v. Roundtree*, 161 F.4th 752 (11th Cir. 2025) (discussing illicit motive evidence needed to defeat summary judgment in case involving a discharge and undisputed adverse action); *Tynes v. Fl. Dep't of Juvenile Justice*, 88 F.4th 939 (11th Cir. 2023) (including no discussion of adverse action requirement because it was undisputed one occurred when plaintiff was terminated from employment); *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300 (11th Cir. 2023) (addressing only whether employer's reason for termination was pretextual); *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011) (containing no discussion as to adverse action required because it was undisputed one occurred with plaintiff's firing).

42 U.S.C. § 2000e-3(a) (numbering added). Like Title VII's anti-discrimination provision, the anti-retaliation provision's first requirement is the defendant's "employer" status, which is defined by statute. *Id.* § 2000e(b). The remaining textual requirements are further defined by caselaw; specifically, the prima facie elements of a retaliation claim are: (1) a protected activity (the "opposition" or "participation" clause in [4] above); (2) a "materially" adverse employment action that would dissuade a reasonable employee from engaging in a Title VII-protected activity ("discrimination" clause in [2] above); and (3) a causal connection between the protected activity and the discrimination ("because" in [3] above). *Compare id.* § 2000e-3(a), *with Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023) (outlining prima facie elements for Title VII retaliation).

A. <u>The sole element before this Court is the "materially adverse employment action" requirement set forth in *Burlington*.</u>

In *Burlington*, the U.S. Supreme Court addressed specifically Title VII's anti-retaliation provision. *See generally* 548 U.S. 53 (2006). In doing so, it held that actionable retaliation is limited to employer actions that are "materially adverse," meaning actions that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57. The Court grounded this standard in the statutory text and purpose of § 2000e-3(a), emphasizing that Title VII does not prohibit all workplace slights or grievances but only conduct producing objective, non-trivial harm. *Id.* at 67-69.

Liedtke concedes that the district court's sole basis for granting summary judgment on her retaliation claim was that she failed to show she suffered an adverse employment action. *See* Appellant's Br. at 15. As addressed above, Liedtke does not appeal the denial of her cross-motion for summary judgment that addressed all three elements of her retaliation claim. That said, Liedtke seeks to substitute her self-described "unusually strong" evidence of retaliatory intent (i.e., the third prima facie retaliation element) for evidence required to establish a materially adverse employment action (i.e., the second prima facie retaliation element). *Id.* at 12 (Issue 3), 52-60. Thus, to focus on the issue actually presented to this Court, it is important to clarify the arguments that are wholly unrelated to the "materially adverse employment action" element as articulated in *Burlington*.

1.    *Liedtke cannot rely on a showing of "intent" to supplant* Burlington*'s requirement that she also show a materially adverse "action."*

"Intent" and "action" are two distinct concepts. *See Muttathottil v. Gordon H. Mansfield*, 381 F. App'x 454, 458 (5th Cir. 2010) (per curiam) (explaining that retaliatory intent "without any subsequent retaliatory act" does not violate Title VII's antiretaliation provision). This distinction is acknowledged in the prima facie elements of Title VII retaliation claims, as the second element of a materially adverse employment action under *Burlington* is separate from—and required in addition to— the third element of intent (also referred to as the causal connection or motive). *See*

27

*Hudson*, 58 F.4th at 231 (outlining Title VII retaliation prima facie elements). In various ways, Liedtke urges the Court to excuse her failure to show a materially adverse employment ***action*** because she believes she has "unusually strong" evidence of retaliatory ***intent***. *Id.* at 12, 43. In doing so, however, Liedtke undermines her supposedly pro-textualist approach by asking the Court to disregard the textual underpinnings of the material adverse employment action standard as articulated by in *Burlington*. *See Hamilton*, 79 F.4th at 502.

Even setting aside this broader doctrinal flaw, Liedtke misplaces her reliance on the "cat's paw" theory in an attempt to demonstrate that an adverse employment occurred. *See* Appellant's Br. at 54-57. Indeed, this Court has already rejected a similar attempt to use expressed retaliatory animus as a substitute for a materially adverse employment action. *See Muttathottil*, 381 F. App'x at 458 (holding that statement indicating retaliatory intent of having "filed too many EEO complaints" is not, itself, a materially adverse employment action under *Burlington*). This is because the cat's paw theory is merely a method of proving retaliatory intent, and it has nothing to do with whether the action taken, at the cat's paw behest so to speak, qualifies as a material adverse employment action. *See Wantou*, 23 F.4th at 436 ("Plaintiffs use a cat's paw theory of liability when they cannot show that the decisionmaker—the person who took the adverse employment action—harbored any retaliatory animus." (internal citation omitted)).

28

That aside, Liedtke presented her cat's paw theory to the district court in her cross-motion for summary judgment and only raised it in context of the retaliatory intent element, not the materially adverse element, effectively conceding it plays no role in determining if a materially adverse action occurred. ROA.2529-31. Liedtke also provided absolutely no record cites to support the factual basis of her cat's paw theory to the district court. ROA.2531-32. The district court therefore appropriately ruled that it was not required to scour the record for evidence of unsupported factual assertions to find a fact issue. ROA.8715, 8718-19. By now copying and pasting essentially the same content into her appellate brief, Liedtke once again fails to refer this Court to any evidence to support her cat's paw theory and connection to establishing an adverse employment action. *See* Appellant's Br. at 54-57. Accordingly, the Court should disregard this theory as unsupported and inadequate to avoid affirming summary judgment.

Liedtke also argues that she has "direct" evidence of retaliation and *McDonnell Douglas* should not be applied exclusively. *Id.* at 12-13 (Issues 4-5). In addition to Liedtke's challenge to *McDonnell Douglas* being raised for the first time on appeal, her legal arguments about direct or circumstantial evidence concern retaliatory intent (i.e., whether the adverse employment action was "because" of protected opposition or participation), not whether she suffered a materially adverse employment action at the outset (i.e., was "discriminated" against, as that term is

used in Title VII's anti-retaliation provision). *See supra* Part I.B.2. Thus, once more, Liedtke's attempt to shift this Court's focus away from the lack of evidence demonstrating the City of Austin even took an adverse employment action against her fails, and she cannot save her retaliation claim from an affirmed dismissal.

Liedtke's arguments about the temporal proximity between the ESP and her alleged prior protected activity fare no better. She concedes, as she must, that these arguments are directed towards "establishing a causal link," the third element relating to retaliatory intent, not the second element regarding a materially adverse employment action. *See* Appellant's Br. at 59 (citing authorities for how temporal proximity can support retaliatory animus element). The same is true with respect to Liedtke's contention that the underlying reports regarding officer-safety incidents cited in the ESP were falsified. That argument is expressly and plainly directed to showing pretext of a legitimate nondiscriminatory reason, issues the district court did not reach. *Id.* at 63-64. Put simply, the district court did not need to reach the issue of retaliatory intent because, as is clear from the record and Liedtke's laser focus on elements other than the one properly before this Court, Liedtke failed to meet a threshold element of a materially adverse employment action.

2. *The district court's failure to cite* Burlington *is not, alone, a sufficient basis for reversal.*

Liedtke is correct that the *Burlington* standard applies to determine whether she suffered a materially adverse employment action for purposes of her Title VII

retaliation claim *Id.* at 51-52. But she is incorrect in asserting that the district court did not apply this standard. *See id.* Although the district court did not cite *Burlington* or expressly lay out its standard word-for-word, the district court did cite Fifth Circuit authorities that applied *Burlington*. ROA.8718-19 (citing *Lemonia v. Westlake Mgmt. Servs., Inc.*, No. 22-30630, 2023 WL 6878915, at *6-7 (5th Cir. Oct. 18, 2023) (per curiam) (quoting and discussing *Burlington* and the material adversity standard)). Ultimately, Liedtke's complaint about a failure to cite *Burlington* is nothing more than a complaint about the form of the district court's reasoning, not its substance.

Furthermore, any error in the district court's failure to cite *Burlington* is not reversible because, as Liedtke concedes, this Court's review of summary judgment is de novo. *See* Appellant's Br. at 51-52. The record below confirms the district court's reasoning for granting summary judgment on Liedtke's retaliation was solely the adverse employment action element. ROA.8718-19. Given this reasoning, Liedtke's challenge upon de novo review to this Court is for it to determine whether the undisputed record establishes a materially adverse employment action when the *Burlington* standard is correctly applied, in accordance with the Fifth Circuit's post-Burlington decisions (such as *Lemonia*). *Cf. Vine St. LLC v. Borg Warner Corp.*, 776 F.3d 312, 318 (5th Cir. 2015) (declining to reverse the district court for applying the pre-*Burlington* standard, even in a bench trial, because the error was harmless);

31

*United States v. De La Garza*, 460 F. App'x 406, 410 (5th Cir. 2012) (per curiam) ("consider[ing] whether the application of the incorrect standard was nonetheless harmless"). Consequently, the City of Austin agrees with Liedtke's ultimate conclusion on this matter: that any error must be disregarded in this Court's de novo application of *Burlington*.

B.   Liedtke has waived her challenge by not citing the record or authority and not discussing what the ESP actually entailed.

Rule 28(a) requires the appellant's brief to contain an "argument…with citations to the authorities and parts of the record on which the appellant relies." FED. R. APP. P. 28(a)(8)(A). The failure to cite authorities and the record constitutes inadequate briefing that will waive an issue. *See Rollins*, 8 F.4th at 397 n.1. The only part of Liedtke's brief that addresses the *Burlington* standard for what constitutes a materially adverse employment action is in the Argument section, Part II.D.2.c, "The ESP was Procedurally Unprecedented." *See* Appellant's Br. at 56. Liedtke therein recites the following factual matters, all without record cites (requiring the reader to scour the brief for whether the assertion was previously supported):

- "An ESP is an employment discipline pursuant to Austin Police General Orders." *Id.* (citing nothing).

- "McBee testified that an ESP can lead to termination." *Id.* (citing nothing).

- The ESP was based on "months-old conduct that Liedtke's previous supervisors" and thus "highly irregular." *Id.* (citing nothing); *but see id.* at 9 (citing ROA.2771-2779).

32

- ▪ "McBee admitted that she never even spoke to Liedtke's 2020 supervisors about Liedtke's work performance or how they had handled the incidents in Pruitt's text messages." *Id.* at 56 (citing nothing).

- ▪ "McBee further admitted that she had never issued similar retrospective discipline for alleged conduct occurring on a previous supervisor's watch, nor was she aware of any APD precedent for such discipline." *Id.* (citing nothing); *but see id.* at 26 (citing ROA.2736-2737).

- ▪ "Lt. Daniel, who signed off on the ESP, testified that she never would have allowed it if she had known that it was largely written by Liedtke's peers about whom Liedtke had just complained." *Id.* at 57 (citing nothing); *but see id.* (citing ROA.2736-2737).

This Argument section then concludes by once again refocusing on retaliatory intent (e.g., what Liedtke refers to as the "consciousness of guilt" as to the City of Austin's purported "lack of a *bona fide* non-retaliatory reason for the ESP"). *See id.* (citing nothing). But in addition to not citing the record, Liedtke cites ***no authorities*** showing how any of these factual assertions, even if established by the record, support her argument that she suffered a materially adverse employment action under *Burlington*. *See* Appellant's Br. at 56. Stated differently, by presenting her argument without "citations to the authorities and parts of the record on which the appellant relies," Liedtke has failed to adequately brief this issue on appeal, making it abandoned or waived. *See* FED. R. APP. P. 28(a)(8)(A); *Rollins*, 8 F.4th at 397 n.1.

33

C.     <u>Liedtke did not raise a fact issue that, under *Burlington*, her ESP would dissuade a reasonable employee from Title VII-protected activity.</u>

An employment action is "materially adverse" for purposes of Title VII's anti-retaliation provision if the action "well might have dissuaded a reasonable worker from" engaging in a Title VII-protected activity. *Burlington*, 548 U.S. at 67. This standard recognizes that the anti-retaliation provision does not protect employees "from all retaliation, [only] from retaliation that produces an injury or harm." *Id.* (quotation marks omitted). The standard further "separate[s] significant from trivial harms" to avoid converting Title VII into a "general civility code for the American workplace." *Id.* (quotation marks omitted).

The standard also "refer[s] to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective…to avoid[] the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Id.* at 68-69. Because the standard is an objective one, "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.* (quotation marks omitted).

34

      1.     *Giving an employee a training and supervision plan is not, alone, a materially adverse employment action under* Burlington.

This Court has held that, without more, merely placing an employee on a plan to correct performance deficiencies is not a materially adverse employment action under the *Burlington* standard for Title VII retaliation claims. *See, e.g., Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 825 (5th Cir. 2019), *abrogated on other grounds by Hamilton*, 79 F.4th at 494; *Lemonia*, 2023 WL 6878915, at *7. In *Welsh*, a teacher was given a one-month, performance-improvement training and supervision plan called a "TINA." *See* 941 F.3d at 821. Although the teacher presented evidence that the TINA was based on fabricated reasons, this Court applied *Burlington* and held the TINA, alone, was not materially adverse and actionable as a matter of law. *See id.* at 822-25. This Court therefore affirmed summary judgment and dismissal of the plaintiff's Title VII retaliation claim. *See id.* at 825.

Subsequently, this Court reaffirmed its ruling in *Welsh* that "a performance improvement plan is not an adverse employment action," *id.* at 824, in *Lemonia*, 2023 WL 6878915, at *7. The *Lemonia* employee "received a negative performance review for the previous year. As a result, he was placed on a six-month Performance Improvement Plan (PIP)." *Id.* at *2. The *Lemonia* employee then sued for Title VII retaliation because he had previously complained of race discrimination. *See id.* Distinguishing a pre-*Burlington* decision in which the employee was involuntarily

terminated following the employee's placement on a six-month PIP, this Court in *Lemonia* applied *Welsh* to conclude that, without more, the mere placement of an employee on a PIP is not materially adverse under *Burlington*. *Id.* at *7 (distinguishing *Ray v. Tandem Computs., Inc.*, 63 F.3d 429, 435-36 (5th Cir. 1995)). As in *Welsh*, the Court in *Lemonia* did not need to delve into the arguments and facts allegedly supporting retaliatory intent (e.g., allegedly fabricated incidents of poor performance) because the lack of a materially adverse employment action sufficed to affirm dismissal on its own. *See id.*

Through *Welsh* and *Lemonia*, this Court identified certain contextual considerations that could be used to assess whether requiring additional supervision and training is materially adverse under *Burlington*. *See* 548 U.S. at 69 ("Context matters."). Those considerations include: (1) whether the supervision and training plan is used as formal discipline (i.e. reprimand) or is merely constructive criticism for performance improvement; (2) whether the plan adversely affected the employee's title, hours, salary, and benefits; (3) whether the plan resulted in a material loss of job privileges or responsibilities; and (4) whether the plan caused a diminution in prestige or change in standing among coworkers. *See Welsh*, 941 F.3d at 822-25; *Lemonia*, 2023 WL 6878915, at *2, 7.[10] Liedtke speaks to none of those

---

[10] In other cases, this Fifth Circuit has considered the severity or egregiousness of any antagonism, whether an extended administrative leave suggests the employee is at fault, and whether reassigning an employee to a new position that burdensomely overloads the employee to

36

considerations in any detail in her brief, likely because, as the next section of the City of Austin's brief reveals, none of those considerations existed with respect to the ESP she was issued.

      2.    *Liedtke failed to raise a fact issue that the ESP was anything more than a training and supervision plan.*

As the district court found, the material undisputed facts in this case establish that no reasonable jury could find that the ESP issued to Liedtke was a materially adverse employment action under *Burlington*, *Welsh*, and *Lemonia*. First, the Field Training Unit Standard Operating Procedures and Liedtke's specific ESP both establish that the ESP did not affect Liedtke's title, hours, salary, or benefits. ROA. 3898-99. She in fact was on a probationary status before her ESP was issued and would have remained so until at least May 2021 had she not voluntarily resigned one week after being placed on her ESP. ROA.3067-68. Second, according to Liedtke, the incidents upon which her ESP were based were already known by her coworkers, and, as she admitted in her resignation letter, were self-reported and taken "in stride." ROA.3332. As to the "mind set" criticisms in the ESP, there is no indication that any of her coworkers were aware of this confidentially noted deficiency, which Liedtke herself described as mere "feedback" about her performance. *Id*. Third, Liedtke's ESP was shorter in duration (three weeks) and required less training and supervision

---

the point of failure. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332-33 (5th Cir. 2009); *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 485 (5th Cir. 2008). None of these considerations are present here with Liedtke.

than the one-month TINA in *Welsh*, 941 F.3d at 822-25, and the six-month PIP in *Lemonia*, 2023 WL 6878915, at *2, 7, making it of even less consequence than those actions found insufficient to establish an adverse action.

Although Liedtke repeatedly refers to the ESP as disciplinary, she does not dispute the district court's conclusion that the disciplinary nature of an employment action does not make it automatically materially adverse. Moreover, in the particular context of APD's probationary police officers, which Liedtke was, the ESP was not used as discipline. The Field Training Unit Standard Operating Procedures plainly reflect that an ESP's sole focus is on improving performance. ROA.3878-79, 3898-99. This contrasts with the formal disciplinary procedures established by the General Orders, such as "Educational Based Discipline" and "Discipline Process," which includes disciplinary appeals. ROA.3465-74. The ESP, itself, is also focused on employee success and does not indicate anywhere in its content that it should be viewed or taken as a reprimand in any way. ROA.3870-74.

Indeed, Liedtke's sole support for the ESP being disciplinary in nature is a definition of "Informal Discipline" contained within the General Orders. That definition, however, is so broad that it includes "training." ROA.3449.[11] Such a

---

[11] Liedtke also asserts that "McBee testified that an ESP can lead to termination." *Id.* at 62 (citing nothing). It is unclear to what testimony Liedtke is specifically referring in the absence of a record citation, but either way, this Court rejected a similar argument in *Lemonia*, 2023 WL 6878915, at *7 (distinguishing *Ray*, 63 F.3d at 435-36, on the basis that there was a materially adverse employment action that occurred because the PIP was followed by an involuntary termination that *actually* occurred); *see also Decou-Snowton v. Jefferson Parish*, 24-30079, 2024

38

broad definition diminishes the import of an ESP being defined as "discipline," especially considering the undisputed context that probationary officers like Liedtke are in "training" for their first fifteen months at APD regardless. ROA.3877. Thus, this Court should reject Liedtke's attempt to reframe her ESP, which was issued to her as a probationary police officer still in the Field Training Program, as disciplinary in nature.[12]

Liedtke raises various other arguments that, as previewed above, pertain to evidence of retaliatory intent or pretext. *See supra* Part II.A.1. Liedtke complains that the officer-safety incidents contained errors and were "copy/pasted" from an allegedly antagonistic male officer reporting stale, previously addressed concerns. *See* Appellant's Br. at 64. But, aside from Liedtke admitting in her resignation email that these incidents supported the ESP, the Court need not, under *Welsh*, wade into the accuracy of the underlying information to determine whether the ESP, itself, constituted a materially adverse employment action under *Burlington*, 941 F.3d at

---

WL 4879466, at \*8 (5th Cir. Nov. 25, 2024) (affirming that "attempted coach and counseling" that did not "come to fruition" would not dissuade reasonable employee and "therefore was not an adverse employment action.").

[12] But even if the ESP was disciplinary in nature, that would not mean, as Liedtke seems to suggest, that it would automatically qualify as a materially adverse employment action under *Burlington*. Many courts in the Fifth Circuit in fact held otherwise since *Burlington*. *See Melancon v. Lafayette Gen. Med. Ctr., Inc.*, No. 22-30704, 2023 WL 6621679, at \*3 (5th Cir. 2023) (holding that written reprimand, standing alone, does not satisfy *Burlington* standard and citing other Fifth Circuit reported cases in support); *Credeur v. La. Through Office of Att'y Gen'l*, 860 F.3d 785, 798 (5th Cir. 2017) (finding last chance agreement not adverse employment action under *Burlington* and citing other Fifth Circuit cases in support); *Brown v. Liberty Mut. Group, Inc.*, 616 F. App'x 654, 658 (5th Cir. 2015) (finding "[m]ere work-related reprimands" generally insufficient to be materially adverse and citing other Fifth Circuit cases in support).

822-25. Liedtke's other complaints—such as the ESP being supposedly unprecedented, revised for purported "bolstering", and subject to Lt. Daniel's disagreement in hindsight—are likewise unsupported and misplaced, as Liedtke fails to connect any of this supposed evidence to how the ESP affected her employment or would have dissuaded a reasonable employee from opposing discrimination. *See* Appellant's Br. at 62-63.

More fundamentally on that point, Liedtke never identifies any evidence showing that the ESP—limited to additional supervision and training during her probationary period—would have dissuaded a reasonable employee from opposing discrimination. She does not contend that the ESP reduced her pay, altered her rank, affected her benefits, or limited her future employment opportunities. Nor does she explain how requiring temporary training exercises and closer supervision—while she was already in a training-focused probationary status—would deter protected activity. *See Burlington*, 548 U.S. at 68–69 (material adversity is assessed objectively and in context). Absent evidence that the ESP imposed any meaningful hardship or carried consequences beyond routine performance management, Liedtke fails to raise a fact issue on the sole retaliation element at issue in this appeal.

3. *By ignoring all context, Liedtke proposes an untenable rule that an ESP, regardless of context, is always materially adverse.*

Despite incorrectly stating that the district court adopted a bright-line rule that an ESP is ***never*** a materially adverse employment action, Liedtke effectively posits

the opposite – that any evidence of being placed on an ESP is **always** sufficient to raise a fact issue as to material adversity. *See id.* at 69 ("Context matters."). But this Court has held the exact opposite in *Welsh* and *Lemonia*, a holding that is consistent with other circuit courts of appeals. *See Welsh*, 941 F.3d at 822-25 (citing authorities); *Lemonia*, 2023 WL 6878915, at *2, 7; *see also Abebe v. Health & Hosp. Corp. of Marion Cnty.*, 35 F.4th 601, 607-08 (7th Cir. 2022) (holding the same as *Welsh*); *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 880 (8th Cir. 2014) (same); *Miceli v. U.S. Dep't of Transp.*, 83 F. App'x 697, 700 (6th Cir. 2003) (per curiam) (same)). Conversely, Liedtke's position collapses the *Burlington* inquiry into a per se rule that placement on an ESP is itself sufficient to establish material adversity, regardless of context or consequence. That is precisely the approach that *Burlington* rejects. *See* 548 U.S. at 69 ("Context matters."). All in all, summary judgment on Liedtke's Title VII retaliation claim should be affirmed, as the district court appropriately found that Liedtke failed to create a material fact issue as to whether she suffered an adverse employment action.

## CONCLUSION & PRAYER

Liedtke asks for reversal of summary judgment without citing evidence on the only element properly before this Court. She likewise does not explain how—much less assert that—her ESP altered her pay, rank, duties, benefits, or workplace standing, nor does she identify any aspect of the ESP that would have dissuaded a

reasonable employee from engaging in protected activity. Perhaps that is because the undisputed record establishes that her ESP was temporary, non-disciplinary, and focused exclusively on additional supervision and training during her probationary period. Liedtke seeks to obscure this lack of evidence and save her case by substituting arguments about intent, motive, and evidentiary frameworks for the material-adversity showing that *Burlington* requires. Title VII does not permit that substitution. Because Liedtke failed to raise a genuine dispute on the sole element supporting summary judgment, and because her remaining arguments are waived, irrelevant, or immaterial to that singular element, the district court's judgment should be affirmed in all respects. The City of Austin respectfully requests that the Court award it any and all other legal and equitable relief to which it may be entitled.

Respectfully submitted,

*/s/ Michael J. Ritter*
Christine E. Reinhard
creinhard@fennemorelaw.com
Michael J. Ritter
mritter@fennemorelaw.com
FENNEMORE CRAIG, P.C.
8000 IH 10 West, Suite 1600
San Antonio, Texas 78230
T: (210) 447-8033
F: (210) 447-8036

and

Sara Schaefer
Sara.schaefer@austintexas.gov
AUSTIN CITY ATTORNEY'S OFFICE
P.O. Box 1546
Austin, Texas 78767
T: (512) 974-1536

*Counsel for Defendant-Appellee*

43

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and served it accordingly upon all counsel of record, including:

Rebecca Webber
Webber Law
4228 Threadgill Street
Austin, Texas 78723
512-537-8833
rebecca@rebweblaw.com

Holt M. Lackey
holt@holtmajorlackey.com
Amaris I. Diaz
amaris@holtmajorlackey.com
Holt Major Lackey, PLLC
111 W. Anderson Ln., Ste. D-211
Austin, Texas 78752
Telephone: (737) 808-2260

***Attorneys For Plaintiff-Appellant Samantha Liedtke***

on Friday, January 23, 2026.

*/s/ Michael J. Ritter*
Michael J. Ritter
Counsel for Defendant-Appellee

44

## CERTIFICATE OF COMPLIANCE
### With Type-Volume Limitation, Typeface Requirements, And Type Style Requirements

Pursuant to 5th Cir. R. 32.2 and 32.3, the undersigned certifies this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) and 5th Cir. R. 32.3.

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[x]    this brief contains <u>10,536</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ]    this brief uses a monospaced typeface and contains [*state the number of lines*] of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B) (iii)

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[x]    this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman type style, or

[ ]    this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Certified on January 23, 2026.

Respectfully submitted,

*/s/ Michael J. Ritter*
Michael J. Ritter
Counsel for Defendant-Appellee

45